UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| ROBERT TROXEL, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 1:10-CV-248 |
|  | ) |  |
| RICHARD G. WORTHY and | ) |  |
| R. GAVIN WORTHY, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

This matter is before the Court on Plaintiff Robert Troxel's motion for default judgment against Defendants Richard G. Worthy ("Richard") and R. Gavin Worthy ("Gavin"). (Docket # 5.) Pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1, District Judge James T. Moody referred the motion to the undersigned Magistrate Judge for the issuance of a Report and Recommendation on whether this Court has personal jurisdiction over Defendants. (Docket # 8.)

Having reviewed the record, which includes a brief and evidence submitted by Troxel in support of personal jurisdiction (Docket # 13, 14), the undersigned Magistrate Judge concludes that the Court does indeed have personal jurisdiction over Defendants and accordingly, that the motion for default judgment (Docket # 5) may be GRANTED. This Report and Recommendation is based on the following facts and principles of law.

## II. FACTUAL AND PROCEDURAL HISTORY[1]

Troxel is a citizen of the State of Indiana and the Chief Executive Officer of Nesco Sales and Rental ("Nesco"), a company located in Bluffton, Indiana, which sells and leases utility vehicles such as high lifts, bucket trucks, and flat bed construction trailers. (Compl. ¶ 1; Troxel Aff. ¶¶ 2, 3.) Defendants are citizens of the State of Texas and operate Efficient Hauling Systems LP ("EHS"), a manufacturer of semi-trailers and truck bodies located in Mansfield, Texas. (Compl. ¶ 2; Troxel Aff. Exs. 1, 2.) Richard, who is Chairman and General Counsel, is primarily responsible for the financial aspects of EHS, while Gavin, whose title is not specified in the record, manages EHS's sales and major projects.[2] (Troxel Aff. Exs. 2, B.)

In October 2007, Richard telephoned Troxel in Indiana to inquire whether Nesco would be interested in purchasing large, flat-bed construction trailers from EHS. (Troxel Aff. ¶¶ 4, 13.) Although Richard made the initial contact, Gavin also contacted Troxel several times to discuss purchasing the construction trailers. (Troxel Aff. ¶ 5.) On at least one occasion, Gavin traveled to Bluffton, Indiana, to solicit Nesco's business. (Troxel Aff. ¶ 6.)

On January 29, 2008, Troxel personally wired $497,700 to Gavin as a "prepayment" for

---

[1] "In making its determination regarding personal jurisdiction[,] the court must resolve any factual disputes in the plaintiff's favor, but must accept the allegations in the complaint as true only to the extent that they are not controverted by other evidence in the record." *Adventus Americas Inc. v. Innovative Envtl. Technologies, Inc.*, No. 06 CV 3267, 2007 WL 704938, at *5 (N.D. Ind. Mar. 5, 2007). Here, since Defendants failed to appear, Troxel's evidence is uncontroverted.

[2] While Defendants' ownership interest in EHS is not articulated in the record, it is clear that each is a principal of EHS by their execution of the Note (defined *infra*) and the following excerpt from Richard's June 25, 2008, email:

> [W]e put everything we had into trying to make this business succeed and we have nothing left with which to pay you or any of business debts which we guaranteed or our personal debts such as home mortgage, utilities etc. There is little chance the company, Gavin and his wife[,] and me and my wife don't file chapter 7 bankruptcies in the very near future.

(Troxel Aff. Ex. C.)

2

future trailer orders by Nesco. (Troxel Aff. ¶ 7.) Nesco planned to repay these funds to Troxel after it received the trailers. (Troxel Aff. ¶ 7.)

Nesco eventually placed an order with EHS for flat bed construction trailers. (Troxel Aff. ¶ 8.) EHS then shipped a number of flat bed trailers, valued at $281,616, from Texas to Nesco in Indiana. (Troxel Aff. ¶ 12.) Upon receipt of the trailers, Nesco reimbursed Troxel the $281,616 as planned. (Troxel Aff. ¶ 9.)

On May 7, 2008, however, Richard sent Troxel an email indicating that he had made a mistake when calculating the prepayment. (Troxel Aff. ¶ 10.) Richard suggested that Troxel wire an additional $209,720 by the following day and another $109,872 by June 5, 2008. (Troxel Aff. ¶ 10.) Troxel and Richard agreed that these additional payments would be for the trailers that were to be shipped by EHS to Nesco and that Troxel's initial prepayment of $497,700 "was to convert into a personal loan." (Troxel Aff. ¶ 10.)

On May 20, 2008, Troxel wired the $209,720. (Troxel Aff. ¶ 10.) In consideration for the additional funds, Troxel had Defendants personally execute a promissory note in his favor for $500,000 (the "Note"), which was signed by Defendants in Texas and returned to Troxel in Indiana. (Troxel Aff. ¶ 12, Ex. 3.) The Note states that it is to be construed and enforced according to the laws of the State of Indiana, but that the maker consents to the personal jurisdiction and venue of the courts "in the State of Ohio and County of Stark."[3] (Troxel Aff. Ex. 3.) An event of default under the Note includes a "failure to meet delivery of trailers on order for Nesco per attached schedule." (Troxel Aff. Ex. 3.) Attached to the Note is an email from

---

[3] Troxel explains that the reference to the State of Ohio and County of Stark was a scrivener's error. (Troxel Aff. ¶ 14.)

Richard with EHS's logo at the bottom ostensibly setting forth certain dates for trailer deliveries. (Troxel Aff. Ex. 3.)

Sometime thereafter, EHS ceased operations and Defendants defaulted on the Note, causing Troxel to file the instant action on July 28, 2010, against Defendants. (Docket # 1.) Defendants have not appeared, and Troxel moved for an entry of default and a default judgment against them. (Docket # 6, 7.) A Clerk's entry of default was entered against Defendants on September 21, 2010. (Docket # 7.)

### III. STANDARD OF REVIEW

A court may only enter a default judgment against a party over which it has obtained personal jurisdiction. *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 598 (7th Cir. 2007) ("Default judgments rendered without personal jurisdiction are void . . . ."); *see also Swaim v. Moltan Co.*, 73 F.3d 711, 716 (7th Cir. 1996); *Robinson Eng'g Co. Pension Plan & Trust v. George*, 223 F.3d 445, 448 (7th Cir. 2000); *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 400 (7th Cir. 1986).[4]

Ordinarily, a federal court may properly exercise personal jurisdiction over a non-resident defendant if two requirements are met. First, the party resisting the exercise of jurisdiction must be amenable to service of process under the forum state's long-arm statute. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Second, the exercise of personal jurisdiction must comport with the due process clause of the United States Constitution. *Id.* Indiana, however, has eliminated the two-step inquiry. The 2003

---

[4] Although the Seventh Circuit Court of Appeals has yet to find that a district court has a duty to *sua sponte* investigate the existence of personal jurisdiction, this Court will nevertheless adopt the more prudent course and conduct such an inquiry.

amendment to Indiana Rule of Trial Procedure 4.4(A) expands the long-arm statute to allow courts to "exercise jurisdiction on any basis not inconsistent with the Constitutions of [Indiana] or the United States." *See LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 966 (Ind. 2006) Accordingly, the sole question before the Court is whether due process would be offended by an exercise of personal jurisdiction over the defendants. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. 1:00-1898, MDL 1358(SAS), M21-88, 2005 WL 106936, at *12-14 (S.D.N.Y. Jan. 18, 2005) (considering Indiana law and noting that the 2003 amendment eliminated the two-step inquiry); *Litmer v. PDQUSA.com*, 326 F. Supp. 2d 952, 955 (N.D. Ind. 2004) (same).

For a court to acquire personal jurisdiction over the defendant, due process requires "that the defendant have such 'minimum contacts' with the forum state as will make the assertion of jurisdiction over him consistent with 'traditional notions of fair play and substantial justice." *Lakeside Bridge & Steel Co. v. Mountain State Const. Co.*, 597 F.2d 596, 600 (7th Cir. 1979) (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). Stated otherwise, the defendant must have "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

Purposeful minimum contacts can create either general or specific jurisdiction. If the defendant's contacts with the forum state are so "continuous and systematic" that the defendant should reasonably anticipate being haled into that state's courts for any matter, then the defendant is subject to general jurisdiction, even if those contacts have no relation to the cause of action. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.9 (1984); *Litmer*, 326 F. Supp. 2d at 955. Alternatively, if the defendant's contacts with the forum state

are not "continuous and systematic," specific personal jurisdiction may be exercised if the cause of action is related to or arises out of the defendant's contacts with the forum state. *Helicopteros*, 466 U.S. at 414. "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King*, 471 U.S. at 472).

Finally, if the defendant has sufficient contacts with the forum state to give rise to either general or specific jurisdiction, due process requires that the assertion of personal jurisdiction over the defendant is reasonable. *Burger King*, 471 U.S. at 477. The reasonableness of exercising personal jurisdiction over a defendant is determined by balancing five factors:

> (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenience and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Id*. at 476-77. These factors only come into consideration if the defendant has sufficient contacts with the forum state to assert personal jurisdiction. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 116 (1987).

## IV. DISCUSSION

The record here does not suggest the existence of general jurisdiction, as there are no facts pointing towards a continuous and systemic presence by Defendants in Indiana. Accordingly, the Court's discussion of personal jurisdiction over Defendants must focus on specific jurisdiction. *See, e.g., Kimball Int'l Inc. v. Warmack*, No. IP88-460-C, 1989 WL

432179, at *3 (S.D. Ind. Mar. 22, 1989).

To begin, Defendants directed EHS's activities at Indiana and purposefully availed EHS of the privilege of doing business in Indiana. *See id*. In that vein, Gavin telephoned Troxel in Indiana on October 22, 2007, on EHS's behalf to see if Nesco was interested in purchasing the trailers. (Troxel Aff. ¶¶ 4, 13.) Richard, as Chairman and General Counsel of EHS, also contacted Troxel on several occasions via email to facilitate the purchase of trailers. (Troxel Aff. ¶ 5, Exs. 2, B, C.) Of course, "even without physical presence in a state, wire and mail communication may establish minimum contacts, especially as part of an interstate commercial contract." *U.S. Sch. of Golf, Inc. v. Biltmore Golf, Inc.*, No. 1:05 CV 1313 DFH TAB, 2005 WL 3022005, at *5 (S.D. Ind. Nov. 10, 2005) (collecting cases).

In addition, Richard traveled to Bluffton, Indiana, on at least one occasion on behalf of EHS to solicit Nesco's purchase of the construction trailers. (Troxel Aff. ¶ 6); *see NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A.*, 28 F.3d 572, 580-81 (7th Cir. 1994) (collecting cases and finding personal jurisdiction over defendant where its manager, after developing initial interest via several telephone calls, visited the forum state one time for contract negotiations). Moreover, EHS agreed to ship the trailers from Texas to Nesco in Indiana. (Troxel Aff. ¶ 12); *Fanimation Design & Mfg., Inc. v. Nicor, Inc.*, IP 02-0576-C-M/S, 2003 WL 21766572, at *6 (S.D. Ind. July 17, 2003) (considering when finding personal jurisdiction over defendant that it shipped products into Indiana for distribution).

Generally, "the minimum contacts of a corporation cannot be imputed to an owner for purposes of establishing jurisdiction." *U.S. Schools of Golf*, 2005 WL 3022005, at *6. Here, however, the record indicates that EHS is a limited partnership, and thus "[a]ny contacts of the

7

limited partnership[] would be attributable to . . . [the] general partner." *Wesleyan Pension Fund, Inc. v. First Albany Corp.*, 964 F. Supp. 1255, 1262 (S.D. Ind. 1997) (collecting cases); *see also Gast v. Dragon ESP, Ltd.*, No. 1:09-cv-0465-RLY-JMS, 2010 WL 1325218, at *1 (S.D. Ind. Mar. 30, 2010) (collecting cases).

Furthermore, a court may find personal jurisdiction over an owner of a company where he "personally engaged in the same Indiana contacts as the corporation" and thus had "fair warning that he could be subject to suit in Indiana in a dispute arising from those contacts." *U.S. Schools of Golf*, 2005 WL 3022005, at *6. In that vein, though the record is silent as to the actual ownership interests of EHS, it is quite apparent that Defendants "have more than a passive, indirect interest in [EHS's] business." *Kimball Int'l*, 1989 WL 432179, at *6 (finding personal jurisdiction over guarantors in a closely held corporation where guarantors were owners and officers of the corporation).

Defendants' vested interest in EHS is particularly evidenced by their execution of the Note in connection with the sale of the trailers to Troxel in Indiana. *See, e.g., Nat'l Can Corp. v. K Beverage Co.*, 674 F.2d 1134 (6th Cir. 1982) (finding personal jurisdiction over guarantors of contract where they voluntarily signed guaranties that assisted in creating a company to be located in the forum state); *Servistar Corp. v. The Home Hardware Co.*, 96 B.R. 593 (W.D. Pa. 1989) (finding personal jurisdiction over two principals where their guaranty was so closely intertwined with the company's obligation "as to blur into one"). In fact, Richard admitted in an email that he and Gavin "put everything [they] had into trying to make this business succeed" and were each contemplating filing personal bankruptcy in connection with EHS's failure. (Troxel Aff. Ex. C.)

Moreover, the record indicates that Troxel would not have advanced additional funds to EHS without the execution of the Note by Defendants as consideration. (Troxel Aff. ¶ 11); *see BFS Diversified Prods., LLC v. Tolley-Hughes, Inc.*, No. 1:03-CV-59-LJM-WTL, 2003 WL 2232783, at *4 (S.D. Ind. Sept. 25, 2003) (considering when finding personal jurisdiction over the principals, that they had made a personal guaranty in order to induce plaintiff to loan money to the company); *Kimball Int'l*, 1989 WL 432179, at *6 (considering when finding personal jurisdiction over the principals that their guaranty was a condition of plaintiff's entering into the contract with the company). And, in signing the Note, Defendants personally "invoked the benefits and protections of Indiana law by agreeing that any dispute about the Note would be resolved under the laws of Indiana." *BFS Diversified Products*, 2003 WL 22327836, at *4; *see Cont'l Bank, N.A. v. Everett*, 964 F.2d 701, 703 (7th Cir. 1992) (collecting cases and finding personal jurisdiction over guarantors where loan documents were delivered and executed in the forum state, the loan was to be repaid in the forum state, and the guarantors agreed that the forum state law would govern); *Biomet Orthopedics, LLC v. Vaughan*, No. 3:08CV280-AS-CAN, 2009 WL 500538, at *4 (N.D. Ind. Feb. 27, 2009) (considering when finding personal jurisdiction over a company wholly-owned by the maker of a promissory note, that the promissory note expressly stated it would be governed by Indiana law).

In fact, "[n]umerous courts, including the Seventh Circuit, have required out-of-state guarantors to defend [a] suit in similar circumstances." *BFS Diversified Products*, 2003 WL 22327836, at *4 (collecting cases). "When a guarantor controls the company that entered into the underlying contract and the plaintiff would not have entered the contract without the guaranty, courts have little difficulty concluding that the exercise of jurisdiction does not offend

9

traditional notions of fair play and substantial justice." *Id*. (citing *Nat'l Can Corp.*, 674 F.2d 1134; *Marathon, Etc. v. Mountain Empire Constr. Co.*, 653 F.2d 921 (5th Cir. 1981)).

Of course, in this instance, by signing the Note Defendants expressly consented to personal jurisdiction of the courts in Stark County, Ohio, a term that Troxel portrays as a scrivener's error. Regardless of that purported error, the provision concerning personal jurisdiction in the Note is written in "permissive", rather than "exclusive", language. *See, e.g., Parker v. Hostetler*, No. 3:07 CV 336 JTM, 2008 WL 34607, at *3 (N.D. Ind. Feb. 6, 2008) (explaining that the parties' consent to Elkhart County courts in the forum selection clause of the agreement did not waive their right to file suit in another jurisdiction, because the clause was not written in exclusive language). Therefore, while Troxel could have filed suit in Ohio, he was not required to do so under the terms of the Note.

To reiterate, the litmus test for finding personal jurisdiction is whether "the defendant's contacts with the state are such that he should reasonably anticipate being haled into court there." *Peterson v. Farrakhan*, No. 2:03-CV-319 PS, 2006 WL 1722362, at *9 (N.D. Ind. June 22, 2006) (citing *Burger King*, 471 U.S. at 474; *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000)). Here, for the foregoing reasons, it is clear that Defendants purposely availed themselves of the privilege of conducting trailer sales in Indiana, invoking the benefits and protections of Indiana's laws, *id*. (citing *Burger King*, 471 U.S. at 474; *Central States*, 230 F.3d at 943), and that the assertion of personal jurisdiction over them would comport with "fair play and substantial justice." *Burger King*, 471 U.S. at 477.

As a result, the undersigned Magistrate Judge concludes that this Court has specific

personal jurisdiction over Defendants, and therefore that Troxel's motion for default judgment may be GRANTED.

## V. CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge concludes that this Court has specific personal jurisdiction over Defendants, and thus that Plaintiff's motion for default judgment (Docket #5) may be GRANTED.

NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings or recommendations. Fed. R. Civ. P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.

SO ORDERED.

Entered as of 4th day of November, 2010.

/s/   Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge